UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                                                    Chapter 7
                                                                          Case No. 14-43471-ess
JUDITH P. MICHEL,
*aka* JUDITH PIERRE,

                         Debtor.

----------------------------------------------------------------x

ROBERT L. GELTZER as Trustee                                               Adv. Pro. No. 16-01122-ess
of the Estate of Judith P. Michel,

                        Plaintiff,

       -against-

TREY WHITFIELD SCHOOL,

                        Defendant.

----------------------------------------------------------------x


## MEMORANDUM DECISION ON TREY WHITFIELD SCHOOL'S MOTION TO DISMISS THE AMENDED COMPLAINT


Appearances:

Allen G. Kadish, Esq.                          Ndukwe Agwu, Esq.
DiConza Traurig Kadish LLP                      Brooklyn Legal Services Corporation A
630 Third Avenue, 7th Floor                     260 Broadway, Suite 2
New York, New York 10017                        Brooklyn, New York 11211
   *Attorneys for Robert L. Geltzer*            *Attorneys for Trey Whitfield School*
   *as Trustee of the Estate of*
   *Judith P. Michel*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

### Introduction

Before the Court is the motion of Trey Whitfield School ("Trey Whitfield" or the "School") to dismiss the Amended Complaint filed by Robert L. Geltzer, the Chapter 7 Trustee of the Estate of Judith P. Michel.  Ms. Michel's young children attended Trey Whitfield – and Ms. Michel paid tuition to the School – for several years before this bankruptcy case was filed. The Trustee brings this action against the School to recover those payments for the benefit of Ms. Michel's creditors under the Bankruptcy Code, New York Debtor and Creditor Law, and common law, on grounds, in substance, that they provided no benefit to Ms. Michel.  Trey Whitfield disagrees, and seeks dismissal of this action on grounds that it does not state a plausible claim for relief.

In its Motion to Dismiss, Trey Whitfield argues that the Amended Complaint should be dismissed because these tuition payments were made for "a legal necessity," that is, the education and care of Ms. Michel's children.  The School also argues that as a parent, Ms. Michel received value because she satisfied her legal obligation to educate and care for her minor children.  Trey Whitfield urges that by satisfying these legal duties as a parent, Ms. Michel "should be presumed to have received reasonably equivalent value," which "overcomes the notion of an intentional fraudulent conveyance."  Mot. to Dismiss, ECF No. 6, at 6.  For these reasons, among others, Trey Whitfield asserts that the Trustee does not plead facts sufficient to state plausible claims, and that the Amended Complaint should be dismissed.

The matter to be decided on this Motion to Dismiss is whether Trey Whitfield has shown that the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b) for failure to state a claim upon which relief may be granted.

## Jurisdiction

The Trustee's fraudulent conveyance claims arise under Bankruptcy Code Sections 544, 548, 550, and 551, and New York Debtor and Creditor Law ("NY DCL").  The Trustee's unjust enrichment claim arises under common law.  The claims are core matters pursuant to  28 U.S.C. § 157(b)(2)(A) and (H), and the Eastern District of New York Standing Order of Reference dated August 28, 1986, as amended by order dated December 5, 2012.  To the extent that these claims may not be core matters, the Trustee and Trey Whitfield have stated their consent to an entry of a final judgment by this Court.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding") For these reasons, this Court has jurisdiction to consider and enter judgment on these claims under 28 U.S.C. § 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

## Background

### *This Bankruptcy Case and Adversary Proceeding*

On July 4, 2014, Judith P. Michel commenced this bankruptcy case by filing a voluntary Chapter 7 petition.  Ms. Michel is employed by the City of New York as a corrections officer at a middle school in Brooklyn.  Her bankruptcy petition shows that she owns her home, that she has a mortgage with a balance of approximately $460,000, and that she has unsecured consumer debts of approximately $96,000.  Her bankruptcy petition also shows that she has a modest teacher's retirement savings account, with a balance of approximately $25,000.  Ms. Michel received a discharge some three months after her case was filed, on October 16, 2014.

About two years later, on July 1, 2016, the Trustee commenced this adversary proceeding against Trey Whitfield by filing a complaint to avoid and recover tuition payments that Ms. Michel made to the School for the school years beginning in 2011, 2012, and 2013.  The Trustee claims that he may avoid and recover these tuition payments as constructive and intentional fraudulent transfers under Bankruptcy Code Sections 548, 550, and 551 and New York Debtor and Creditor Law Sections 273, 274, 275, 276, and 278, and also that they can be recovered from the School under a common law theory of unjust enrichment.  On February 13, 2017, the Trustee filed an Amended Complaint to redact the names of Ms. Michel's minor children, as required by Bankruptcy Rule 9037.  Am. Compl., ECF No. 17.  In all other respects, the Amended Complaint mirrors the Complaint.

On August 16, 2016, Trey Whitfield moved to dismiss the Amended Complaint.  Mot. to Dismiss, ECF No. 6.  On November 1, 2016, the Trustee filed an objection to the Motion to Dismiss.  Opp., ECF No. 9.  On November 8, 2016, Trey Whitfield filed a reply.  Reply, ECF No. 11.  On November 15, 2016, the Court held a hearing on the Motion to Dismiss at which the Trustee and Trey Whitfield appeared and were heard, and the Court set a schedule for additional briefing.  As directed, on December 12, 2016, the Trustee filed supplemental opposition to the Motion to Dismiss, and on January 20, 2017, Trey Whitfield filed a supplemental reply.  Supp. Opp., ECF No. 12; Supp. Reply, ECF No. 16.  On February 14, 2017, the Court held a hearing on the Motion to Dismiss, at which the Trustee and Trey Whitfield appeared and were heard, and the Court closed the record and reserved decision.[1]

---

[1]  The Trustee is also the plaintiff in an action entitled *Robert L. Geltzer as Trustee of the Estate of Judith P. Michel v. Lawrence Woodmere Academy*, Adv. Proc. No. 16-01121, and on September 18, 2017, this Court entered a memorandum decision on Lawrence Woodmere Academy's Motion to Dismiss that action.

*The Allegations of the Amended Complaint*

The Trustee alleges that before this bankruptcy case was filed, Ms. Michel sent her three minor children to Trey Whitfield School, an independent school located in Brooklyn, and that she made tuition payments to the School in consideration for her children's education and care for the academic years beginning in 2011, 2012, and 2013.

The Amended Complaint states that Ms. Michel's minor child JM became six years of age in April 2009, and was required under New York law to attend a school providing full-time instruction beginning in September 2009. From September 1, 2011 until June 4, 2014, when minor child JM was between the ages of eight and eleven, the Trustee alleges that Ms. Michel made tuition payments totaling $15,385 to Trey Whitfield for the child's education.

While the allegations are somewhat inconsistent,[2] the Amended Complaint also states that Ms. Michel's minor child AM was required under New York law to attend a school providing full-time instruction beginning in September 2011. From September 1, 2011 until June 4, 2014, when minor child AM was between the ages of six and nine, the Trustee alleges that Ms. Michel made tuition payments totaling $15,335 to Trey Whitfield for the child's education.

And the Amended Complaint states that Ms. Michel's minor child KM became six years of age in 2014, and was required under New York law to attend a school providing full-time instruction beginning in September 2014. From September 1, 2011 until June 4, 2014, when minor child KM was between the ages of three and one-half and six years old, the Trustee alleges

---

[2] For example, the Amended Complaint states that minor child AM "was born in November 2011," and "became six years of age in April 2009." Am. Compl. ¶¶ 9-10. The Amended Complaint also states that minor child AM "was not required to attend a school providing full time instruction until September 2011." Am. Compl. ¶ 16. For purposes of this Memorandum Decision, the Court assumes that minor child AM became six years of age and was first required to attend a school providing full time instruction by September 2011.

that Ms. Michel made tuition payments totaling $15,160 to Trey Whitfield for the child's education.

*The Transfers*

The Trustee alleges that between September 2011 and June 2014, Ms. Michel made transfers in the form of tuition payments to Trey Whitfield totaling $45,880 (the "Transfers").[3] The Trustee also alleges that between July 5, 2012 and July 4, 2014, Ms. Michel made transfers in the form of tuition payments to Trey Whitfield totaling $30,190 (the "Two-Year Transfers").

*The Claims for Relief*

The Trustee asserts five claims for relief.  In the First Claim for Relief, the Trustee seeks to avoid and recover the Two-Year Transfers from Trey Whitfield as constructive fraudulent conveyances under Bankruptcy Code Sections 548, 550, and 551.  He alleges that between July 5, 2012 and July 4, 2014, Ms. Michel made the Two-Year Transfers to the School in the amount of $30,190, and that she received no consideration or less than a reasonably equivalent value for these payments.  For these reasons, the Trustee seeks a judgment against Trey Whitfield in the amount of $30,190.

In the Second Claim for Relief, the Trustee seeks to avoid and recover the Transfers from Trey Whitfield as constructive fraudulent conveyances under Bankruptcy Code Section 544 and New York Debtor and Creditor Law Sections 273, 274, 275, and 278.  He alleges that between

---

[3] Exhibit A to the Amended Complaint is a schedule of payments to Trey Whitfield from September 1, 2011 through June 4, 2014, on account of Ms. Michel's minor children JM, AM, and KM.  The Trustee alleges that minor child JM was not required to attend a school providing full time instruction until September 2009, minor child AM was not required to attend a school providing full time instruction until September 2011, and minor child KM was not required to attend a school providing full time instruction until September 2014.  The schedule shows that of the $45,880 total amount of the Transfers to Trey Whitfield, $15,160 was paid before the children were required to attend a school providing full time instruction, based on the Trustee's allegations.

September 2011 and June 2014, Ms. Michel made tuition payments to the School in the amount of $45,880, that she received no consideration or less than a reasonably equivalent value for these payments, and that she "(i) was insolvent or was rendered insolvent as a result of [these payments], (ii) had unreasonably small capital for the business in which she was engaged or was about to engage, and/or (iii) intended to incur, or believed that she would incur, debts beyond her ability to pay as such debts matured." Am. Compl. ¶ 32. For these reasons, the Trustee seeks a judgment against Trey Whitfield in the amount of $45,880.

In the Third Claim for Relief, the Trustee seeks judgment against Trey Whitfield on a theory of unjust enrichment. He alleges that Ms. Michel did not receive adequate – or any – consideration in return for the tuition payments that she made to the School, and Trey Whitfield "unfairly benefitted by receiving and retaining" the tuition payments. Am. Compl. ¶ 37. For these reasons, the Trustee seeks a judgment against Trey Whitfield in the amount of $45,880.

In the Fourth Claim for Relief, the Trustee seeks to avoid and recover the Transfers from Trey Whitfield as intentional fraudulent conveyances under Bankruptcy Code Sections 548(a)(1)(A) and 550. He alleges that Ms. Michel knew that she was insolvent when she made the tuition payments, that she applied for scholarships for her children and provided financial information to the School, and that she made the tuition payments with actual intent to hinder, delay, or defraud her other creditors because she knew that she would not be able to pay them after making these payments to the School. The Trustee also alleges that Trey Whitfield provided scholarship aid that reduced Ms. Michel's tuition payments "knowing that [she] could not afford to pay [its] tuition requirements." Am. Compl. ¶ 44. And the Trustee alleges that Trey Whitfield provided no benefit to Ms. Michel in return for these payments. For these reasons, the Trustee seeks a judgment against Trey Whitfield in the amount of $45,880.

And finally, in the Fifth Claim for Relief, the Trustee seeks to avoid and recover the Transfers as intentional fraudulent conveyances under New York Debtor and Creditor Law Sections 276.  He alleges that Ms. Michel made tuition payments to Trey Whitfield within six years of the petition date, that the School did not provide any benefit to her in return for these payments, and that Ms. Michel made these payments with actual intent to hinder, delay, or defraud her creditors.  For these reasons, the Trustee seeks a judgment against Trey Whitfield in the amount of $45,880, plus prejudgment interest and costs and expenses, including reasonable attorneys' fees.

### *The Motion To Dismiss*

On August 16, 2016, Trey Whitfield moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b), made applicable here by Bankruptcy Rule 7012.  The School argues that the Trustee does not state any plausible claims for relief against it, and seeks dismissal of the Amended Complaint with prejudice.

Trey Whitfield states that with respect to each of these claims, the tuition payments that the Trustee seeks to recover were made for "a legal necessity," that is, the education and care of Ms. Michel's children.  Mot. to Dismiss ¶ 13.  For these reasons, the School urges, Ms. Michel received value because she satisfied her legal obligation to educate and care for them.  That is, by satisfying her legal duties as a parent, Ms. Michel "should be presumed to have received reasonably equivalent value," which "overcomes the notion of an intentional fraudulent conveyance."  *Id*.  Trey Whitfield asserts that "[t]he United States Constitution leaves it to the state governments to regulate the education of minors," and that under the Constitution, "parents have a fundamental right to direct the education of their children."  Mot. to Dismiss ¶¶ 38, 43.

Trey Whitfield also argues that the First, Second, Fourth, and Fifth Claims for Relief, which seek to avoid and recover Ms. Michel's tuition payments as constructive and intentional fraudulent conveyances, do not state plausible claims for relief because Ms. Michel received reasonably equivalent value and/or fair consideration in exchange for these payments, so they could not have been made with fraudulent intent, whether constructive or intentional.

And Trey Whitfield asserts that the Third Claim for Relief, by which the Trustee seeks to recover the tuition payments under a common law theory of unjust enrichment, should be dismissed as frivolous, and for failure to state a plausible claim because, among other reasons, the Trustee does not allege that the School "received more than its standard student tuition for the years in question." Mot. to Dismiss ¶ 93. It also argues that the Third Claim for Relief is not pleaded sufficiently "since unjust enrichment is a quasi-contract theory, [and] it necessarily requires a demonstration that there was no traditional tuition payment contract between [Trey Whitfield] and the Debtor, which the Trustee has not alleged." Mot. to Dismiss ¶ 94. And the School states that "equity and good conscience all point toward [Trey Whitfield] retaining the Tuition Payments for which they provided value to the Debtor (and her children) and the Debtor's sole right in discretion toward this decision." Mot. to Dismiss ¶ 94.

The Trustee responds that he has adequately pleaded plausible claims to avoid and recover the Transfers and the Two-Year Transfers as constructive or intentional fraudulent transfers, because he alleges that Ms. Michel did not receive reasonably equivalent value under the Bankruptcy Code or fair consideration under New York's Debtor and Creditor Law in exchange for her tuition payments to Trey Whitfield for her children's education.

The Trustee also responds that to satisfy the applicable standard, Ms. Michel must receive value in exchange for the Transfers – the tuition payments to Trey Whitfield – that is

measurable, concrete, and economic, to prevail as an affirmative defense against an avoidance action.  According to the Trustee, "the central issue of the Motion to Dismiss" is "where a payment is made for private school tuition where a public school education is available for free, no concrete, measurable economic benefit was received by the transferor at the time of the transfer."  Opp. ¶ 8.

And the Trustee observes that with respect to the sufficiency of the pleading of the fraudulent transfer claims, the Amended Complaint provides Trey Whitfield with "full and fair notice of the claims and the grounds upon which they rest."  Opp. ¶ 17.  He states that the Amended Complaint satisfies the applicable pleading standard to recover the Transfers and the Two-Year Transfers as constructive or intentional fraudulent conveyances from the School because if Congress intended to provide a safe harbor for charitable contributions, it could provide for that in the Bankruptcy Code – but it has not done so.  The Trustee argues that the Amended Complaint applies the correct "reasonably equivalent value" standard, measured in concrete economic benefits to the transferor at the time of the transfer.  Opp. ¶ 25.

The Trustee also argues that this Court is not bound by, and should not follow, Chief Judge Craig's decision in *Geltzer v. Xaverian High School (In re Akanmu)*, 502 B.R. 124 (Bankr. E.D.N.Y. 2013) ("*Xaverian*").  There, in dismissing the complaint, the court concluded that the trustee did not state a plausible claim to recover pre-petition tuition payments made by the debtors to a private high school for the education of their minor children, and "emphatically rejected" the assertion that the debtors did not receive reasonably equivalent value in return for those payments.  *Xaverian*, 502 B.R. at 138.

That is, the Trustee argues that with respect to the "reasonably equivalent value" element of a fraudulent transfer claim, *Xaverian* was wrongly decided because, among other reasons,

courts should consider the concept of "reasonably equivalent value" through a concrete, economic lens, rather than "a subjective equation" where the standard is satisfied "if the debtor gets some emotional benefit." Opp. ¶ 41. The Trustee states that "it is . . . a prerequisite truth, that there must be some 'pennies' involved, i.e., a concrete, measurable economic value to the transferor at the time of the transfer." Supp. Opp. ¶ 9.

The Trustee states that in *Xaverian*, Chief Judge Craig incorrectly "created her own test" to assess whether the debtor received reasonably equivalent value in exchange for private school tuition payments when she determined that parents who paid private school tuition for their minor children's education received such value because parents have a state-mandated obligation to educate their children, and in meeting that obligation, indirect non-financial benefits constitute reasonably equivalent value. Opp. ¶ 28. The Trustee also takes issue with the court's consideration of the standard applied by New York courts to assess whether parents have met their obligation to provide for their child's necessities, including education, because the court did not note that the parents must do so "'*in accordance with their means*.'" Opp. ¶ 30 (quoting *Holodook v. Spencer*, 36 N.Y.2d 35, 44 (1974)). According to the Trustee, the court erred in concluding that the mandate for parents to educate their children insulates payments made for a minor child's education from a Chapter 7 trustee's scrutiny, even when it results in one creditor being paid over another. And the Trustee argues that the court also incorrectly concluded that the reasonably equivalent value and fair consideration standards could be satisfied by anything other than a direct, economic, measurable value to the transferor at the time of the transfer, "especially given that a free option was available." Opp. ¶ 38.

The Trustee also urges the Court to disregard the *Xaverian* decision in favor of *Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez)*, 342 B.R. 165 (Bankr. S.D.N.Y. 2006), and in

particular, to follow "the great weight of the case law" cited there "which looks at the concrete, measurable, economic impact upon the estate at the time of the transfer." Opp. ¶ 41.  In *In re Gonzalez*, the court determined on a motion for summary judgment that a debtor's mortgage payments to the defendant bank on account of real property where his son and the child's mother lived, and where he visited on weekends, constituted "a benefit of economic value conferred on the Debtor as a result of the transfer," and granted summary judgment in favor of the defendant lender. *In re Gonzalez*, 342 B.R. at 172.  The court also concluded that "this value is reasonably equivalent to the transfer of mortgage payments under the totality of the circumstances." *In re Gonzalez*, 342 B.R. at 173.

As to the Third Claim for Relief, for unjust enrichment, the Trustee responds that he adequately alleges circumstances to show that it is against equity and good conscience to permit Trey Whitfield to retain the tuition payments made by Ms. Michel, and that those payments should be turned over to him as the Trustee for the benefit of her creditors.

The Trustee also questions whether Trey Whitfield is a good faith transferee, and responds that by providing financial assistance and scholarship aid to Ms. Michel and her family, the School may be found to lack good faith if it "possessed knowledge sufficient to induce a reasonable person to investigate."  Supp. Opp. ¶ 23.

Trey Whitfield replies that the Trustee does not provide "even minimal allegations" to support his claims to recover Ms. Michel's tuition payments as intentional fraudulent transfers. Reply ¶ 2.  Trey Whitfield argues that the Trustee's assertion that Ms. Michel made tuition payments to the School while insolvent does not provide a plausible basis to infer that she acted with fraudulent intent, and that "[a] debtor's knowledge of her insolvency or risk of insolvency is . . . not direct evidence of the intent to defraud creditors."  Supp. Reply ¶ 23.

Trey Whitfield replies that the Trustee has not alleged facts sufficient to indicate the presence of any badges of fraud to support the inference that in making tuition payments for her children's education and care, Ms. Michel was acting with the intent to defraud creditors. Trey Whitfield notes that the Trustee does not allege that it intended to take "unconscionable advantage of the Debtor," or that it knew that Ms. Michel intended to hinder, delay, or defraud her creditors by making the tuition payments at issue. Reply ¶ 23.

Trey Whitfield also replies that the Trustee's allegations that Ms. Michel applied for financial aid "and, upon being denied aid, paid for her children's childcare and school tuition using legitimately obtained credit" do not support the inference that she acted with the intent to defraud her creditors. Supp. Reply ¶ 21. Trey Whitfield asserts that Ms. Michel received reasonably equivalent value in exchange for the tuition that she paid on behalf of her minor children because the Bankruptcy Code does not require a debtor to have obtained a service at the lowest cost, but instead, requires only that the exchange conferred reasonable value on the debtor.

And Trey Whitfield replies that the Trustee's allegations simply do not show that it acted in bad faith, or that it was not an innocent transferee without notice, as required to state a claim under the Bankruptcy Code and New York's Debtor and Creditor Law. It argues that none of the Trustee's allegations indicate that the School had "anything but an honest belief in the propriety of the Debtor's act of paying tuition to the school." Reply ¶ 23. Nor, it asserts, does the Trustee allege that the tuition that it charged was anything other than a fair market value for the services that it provided, or that Ms. Michel's payment was anything other than an arm's length transaction, or "that [Trey Whitfield] acted in bad faith to harm the Debtor's creditors by accepting her tuition payments." Supp. Reply ¶ 9. Trey Whitfield concludes that Ms. Michel

received reasonably equivalent value in exchange for the Tuition Payments "because [Ms. Michel] and her children were tangibly directly and indirectly benefited by her ensuring that her children are educated, safe, and healthy."  Supp. Reply ¶ 12.

Finally, Trey Whitfield replies that *Xaverian* is persuasive authority, and should be followed here.

## The Applicable Legal Standards

The issues raised by this Motion to Dismiss call for the Court to consider the standard on a motion to dismiss under the pleading requirements established by Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), made applicable here by Bankruptcy Rules 7008, 7009, and 7012, and to determine whether applying that standard, Trey Whitfield has shown that the Trustee does not state plausible claims upon which relief may be granted.

### *Pleading Requirements Under Federal Rule of Civil Procedure 8(a)*

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated that under this rule, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

And in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a two-step approach for courts to follow when deciding a motion to dismiss.  First, a court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Thus,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### *Pleading Requirements Under Federal Rule of Civil Procedure 9(b)*

Federal Rule of Civil Procedure 9(b) calls for a heightened level of particularity for allegations of fraud. The rule states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). The rule also provides that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

To meet this standard, "a plaintiff [must] allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *In re Residential Capital, LLC*, 507 B.R. 477, 495 (Bankr. S.D.N.Y. 2014) (citing *Ind. State Dist. Council v. Omnicare, Inc.*, 719 F.3d 498, 503 (6th Cir. 2013)). "[C]onclusory allegations that [the] defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982). Instead, the complaint must identify with some specificity the acts or statements constituting the fraud. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied*,

446 U.S. 946 (1980). At the same time, a fraud pleading that concerns "matters peculiarly within the adverse parties' knowledge" satisfies Rule 9(b)'s requirements if it is accompanied by a statement of facts upon which the belief is founded. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972).

<u>*Pleading Requirements Under Federal Rule of Civil Procedure 12(b)(6)*</u>

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). As the Supreme Court has explained, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Plausibility 'is not akin to a probability requirement,' rather plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Gowan v. Patriot Grp. (In re Dreier LLP)*, 452 B.R. 391, 406 (Bankr. S.D.N.Y. 2011) (*quoting Iqbal*, 556 U.S. at 678).

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010). Second, the court must consider whether "these well-pleaded factual allegations state a 'plausible claim for relief.'" *In re Dreier*, 452 B.R. at 407 (quoting *Iqbal*, 556 U.S. at 679). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. And finally, it is the "plaintiff's obligation to provide the grounds of his entitlement to relief." *Twombly*, 550 U.S. at 555 (citation omitted).

**Discussion**

***Whether Trey Whitfield Has Shown that the Trustee Does Not State a Plausible Claim To Avoid and Recover the Tuition Payments as Constructive Fraudulent Transfers Under Bankruptcy Code Section 548(a)(1)(B)***

The Trustee's First Claim for Relief seeks to avoid and recover the Two-Year Transfers in the amount of $30,190 as constructive fraudulent transfers under Bankruptcy Code Sections 548, 550 and 551. The Trustee alleges that these tuition payments were made by Ms. Michel, that she did not receive adequate consideration from Trey Whitfield in return, and that she made these payments at a time when she was not financially able to make them.

Section 548(a)(1)(B) applies to constructive fraudulent transfers, and provides:

> (a)(1)  The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . .
>
> > (B)(i)  received less than a reasonably equivalent value in exchange for such transfer . . .; and
> >
> > (B)(ii)(I)      was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . ;

11 U.S.C. § 548(a)(1)(B).

To state a plausible claim under Section 548(a)(1)(B), the Trustee must allege four elements. First, he must allege that an interest of Ms. Michel's in property was transferred. Second, he must allege that she made the transfer within two years before the petition was filed. Third, he must allege that she "received less than a reasonably equivalent value in exchange for the transfer." 11 U.S.C. § 548(a)(1)(B)(i). And finally, he must allege that one of four conditions is satisfied – here, that she "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(ii). *Schneider v. Barnard*, 508 B.R. 533, 548 (E.D.N.Y. 2014).

16

Pleading constructive fraud is not subject to "the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Bank of Comm'ns v. Ocean Dev. Am., Inc.*, 2010 WL 768881, at \*6 (S.D.N.Y. Mar. 8, 2010). Instead, the Trustee need only satisfy Federal Rule of Civil Procedure 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*, 458 B.R. 87, 110-11 (Bankr. S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 8(a)(2)).

Trey Whitfield argues that the Trustee does not state a claim under Section 548(a)(1)(B), for several reasons. Trey Whitfield asserts that in exchange for the Two-Year Transfers, Ms. Michel received fair consideration and reasonably equivalent value in the form of "satisfaction of education-related legal obligations." Mot. to Dismiss ¶ 53. And the School contends that even if Ms. Michel made a constructive fraudulent transfer, it has a valid defense because it acted in good faith when it received these tuition payments without knowledge of her possible insolvency.

The Trustee responds that the "reasonably equivalent value" standard calls for the Court to assess the presence or absence of concrete economic benefits to the transferor at the time of the transfer. Opp. ¶ 34. He urges that reasonably equivalent value for purposes of Bankruptcy Code Sections 544(b) and 548 means value that is "a concrete, economic, measurable value to the transferor at the time of the transfer." Opp. ¶ 35. He contrasts this with the court's analysis in *Xaverian* and asks this Court to "examine . . . anew" whether a parent's obligation to provide for a child's education, and the educational decisions that a parent makes, are subject to a trustee's review in bankruptcy. Opp. ¶¶ 26-27. Based on this test, he urges, Ms. Michel did not receive reasonably equivalent value in exchange for the Two-Year Transfers because satisfying

her obligation to provide for the education of her minor children does not yield a concrete economic benefit to her.

As described above, to state a claim under Section 548(a)(1)(B), the Trustee must allege that an interest of the debtor in property was transferred, that the transfer was made within two years before the bankruptcy case was commenced, that the debtor received less than a reasonably equivalent value in exchange for the transfer, and that one of the four conditions set forth in Section 548(a)(1)(B)(ii) is met – here, that Ms. Michel was insolvent at the time the transfer was made, or that she was rendered insolvent as a result of the transfer.  And on a motion to dismiss, the Court must assume that the Trustee's well-pleaded allegations of fact and the reasonable inferences that they support are true.  The Court considers each of these elements in turn.

The first element of the Trustee's Section 548(a)(1)(B) claim is that an interest in property of Ms. Michel was transferred.  Here, the record shows that the Trustee alleges that during the two-year period from July 5, 2012 through July 4, 2014, Ms. Michel made payments to Trey Whitfield – the Two-Year Transfers – in the amount of $30,190, and it is reasonable to infer that the payments were transfers of an interest of the debtor in property.  That is, the Trustee has adequately alleged the first element of this claim.

The second element of the Trustee's Section 548(a)(1)(B) claim is that the transfer was made within two years before Ms. Michel filed her bankruptcy petition.  Here again, the record shows that the Trustee alleges that the Two-Year Transfers were made between July 5, 2012 and July 4, 2014, or within two years of the petition date of July 4, 2014.  That is, the Trustee also has adequately alleged the second element of this claim.

The third element of the Trustee's Section 548(a)(1)(B) claim is that Ms. Michel received no consideration, or less than a reasonably equivalent value, from the School in return for the Two-Year Transfers.

Here, the record shows that the Trustee alleges that Ms. Michel made the Two-Year Transfers from July 5, 2012 to July 4, 2014 to Trey Whitfield as tuition payments for her children's education. He alleges that Ms. Michel made some of these tuition payments for the education of her children at a time when they were at least six years of age, and required to attend a school providing full-time instruction. And he alleges that she made other tuition payments when at least one of her children was younger than six years of age, and not required by New York law to attend school. He also alleges that Ms. Michel did not receive reasonably equivalent value for these tuition payments, and argues that this is because her children, and not she, were educated at Trey Whitfield, and because a free education was available to them at public school.

A very helpful starting point for considering whether the Trustee has adequately alleged that Ms. Michel did not receive reasonably equivalent value for her tuition payments to Trey Whitfield is *Geltzer v. Xaverian High School (In re Akanmu)*, 502 B.R. 124 (Bankr. E.D.N.Y. 2013). Both the Trustee and Trey Whitfield point to this decision, though they disagree sharply as to whether it is persuasive and should be followed by the Court here.

In *Xaverian*, the Chapter 7 trustee, who also is the trustee in this case, commenced an adversary proceeding against two independent schools to avoid and recover tuition payments made by the debtors for their minor children's education as constructive fraudulent transfers or on a theory of unjust enrichment. *Xaverian*, 502 B.R. at 128. The trustee alleged that the debtors did not receive reasonably equivalent value for those tuition payments, totaling $46,562,

because their children, and not the debtors, received the education. *Id*. There as here, the trustee also sought to recover the debtors' tuition payments from the schools under NY DCL Section 273, and asserted that the debtors were insolvent or rendered insolvent by the transfers, had unreasonably small capital for the business in which they were engaged, and/or intended to incur that they would incur debts that were beyond their ability to pay. *Xaverian*, 502 B.R. at 128-29. And the trustee claimed that the school was unjustly enriched by the payments. *Xaverian*, 502 B.R. at 138.

The court reviewed the legal standard to avoid a constructive fraudulent transfer under Bankruptcy Code Sections 544 and 548, noted that "reasonably equivalent value" is not defined under the Bankruptcy Code, and concluded that "[t]he consideration given in exchange for the transfer need not be mathematically equal, or a penny for penny." *Xaverian*, 502 B.R. at 130 (citing *In re Gonzalez*, 342 B.R. at 174). The court also concluded that the terms "fair consideration" used in NY DCL Section 273, and "reasonably equivalent value" used in Bankruptcy Code Section 548, "have substantially the same meaning." *Xaverian*, 502 B.R. at 131 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. at 110). The court stated that "transfers that satisfy, discharge, or secure all or part of an obligation of the transferor are for 'value.'" *Xaverian*, 502 B.R. at 131. And the court noted that an indirect benefit defense may be asserted in an individual context. *Id*.

Applying those standards, the court concluded that the debtors "received reasonably equivalent value and fair consideration, directly and indirectly, in exchange for the Tuition Payments, in the form of the education provided to their children." *Xaverian*, 502 B.R. at 131-32. The court stated that by sending their children to school, the debtors "satisf[ied] their legal obligation [as parents] to educate their [minor] children, thereby receiving reasonably equivalent

value and fair consideration." *Xaverian*, 502 B.R. at 132-33.  The court declined to "permit a trustee to scrutinize debtors' expenditures for their children's benefit," and noted that to do otherwise would "grant[] [a trustee] veto power over a debtor's personal decisions, at least with respect to pre-petition expenditures." *Id*.  And the court noted that "none of the chapters of the Bankruptcy Code authorize the trustee to review the reasonableness of a debtor's pre-petition expenditures or to seek recovery of expenditures deemed not 'reasonably necessary.'" *Xaverian*, 502 B.R. at 134.

This Court agrees with the thorough and well-reasoned analysis set forth in *Xaverian*, for several reasons.  At the outset, and as the *Xaverian* court found, "it is axiomatic that parents are obligated to provide for their children's necessities, such as food, clothing, shelter, medical care, and education." *Xaverian*, 502 B.R. at 132.  In addition, "New York state law requires parents to ensure school attendance by their child." *Id*.  And "a parent's failure to observe minimum standards of care in performing these duties entails both remedial sanctions, such as the forfeiture of custody, and criminal sanctions." *Holodook*, 36 N.Y.2d at 44.  It is implausible to suggest that a parent does not receive some value in exchange for tuition payments in connection with meeting these obligations.

This Court also agrees, as the *Xaverian* court found, that it is not necessary that a debtor acquire goods or services at the lowest cost, or no cost at all, before his or her bankruptcy case is filed:

> It is irrelevant to this determination whether the Debtors could have spent less on the children's education, or, for that matter, on their clothing, food or shelter.  To hold otherwise would permit a trustee to scrutinize debtors' expenditures for their children's benefit, and seek to recover from the vendor if, in the trustee's judgment, the expenditure was not reasonably necessary, or if the good or service could have been obtained at a lower price, or at no cost, elsewhere. . . .  The absurdity of this scenario is obvious.

*Xaverian*, 502 B.R. at 132.

21

Indeed, if this were the rule, there would be no reason to stop at actions to recover pre-petition payments for expenses that a trustee views as unnecessary or excessive for a debtor's children – though such payments do implicate additional duties, as noted above.  The Trustee's theory would arguably support (and could conceivably require) a trustee bringing an action against any vendor or service provider from whom or which a debtor purchased discretionary, as opposed to necessary, goods or services in the months or years preceding a bankruptcy case.  The same obligation could conceivably arise where a debtor purchased necessary goods or services but did not obtain them at the lowest possible cost.  Neither the bankruptcy law nor common sense supports such a result.  That is, it is implausible to suggest that a claim to recover a pre-petition payment for goods or services may lie because the debtor could have obtained them at a lower cost, or even for no cost at all.

This conclusion is consistent with decisions of other bankruptcy courts in similar contexts.  As one bankruptcy court observed:

> Often, a debtor prior to bankruptcy will make improvident purchases or expenditures which have a detrimental effect on creditors and may even be the precipitating cause of bankruptcy.  A spendthrift debtor may purchase clothes or a new car, take costly vacations on credit, or otherwise incur unpayable debts for goods or services.  The fact that all these transactions may be said to "exacerbate the harm to creditors and diminish the debtor's estate" from an overall perspective does not mean that the debtor received less than reasonably equivalent value in respect of each particular transaction.

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 681 (Bankr. S.D.N.Y. 2000) (quoting *Martino v. Edison Worldwide Capital* (*In re Randy)*, 189 B.R. 425, 441 (Bankr. N.D. Ill. 1995)), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001).

Another bankruptcy court rejected the Chapter 7 trustee's Section 548 claim to recover pre-petition payments in connection with a horse owned by the debtor's spouse, on grounds that

the expenses, while arguably financially unsound, were a "routine monthly expense" for the family. *Morris v. Vansteinberg (In re Vansteinberg)*, 2003 WL 23838125, at *6 (Bankr. D. Kan. Nov. 26, 2003). Similarly, a bankruptcy court dismissed with prejudice the Chapter 7 trustee's Section 548 action to recover from the debtors' daughter the funds that the debtors paid to the daughter's wedding planner. *Montoya v. Campos (In re Tarin)*, 454 B.R. 179, 183 (Bankr. D.N.M. 2011).

This Court also agrees that educational services provided to minor children "may constitute consideration to the parents" because of the confluence of economic interest among a family unit of minor children and their parents. *Xaverian*, 502 B.R. at 137. As the New York Court of Appeals has observed, "[i]t is artificial to separate the parent and child as economic entities." *Holodook*, 36 N.Y.2d at 47. And as the *Xaverian* court found, "the Debtors and their minor children must be viewed as a single economic unit for these purposes [and so] goods and services purchased by parents for their minor children should generally be treated, for purposes of constructive fraudulent conveyance analysis, as though they had been purchased by the parents for themselves." *Xaverian*, 502 B.R. at 136-37.

And finally, this Court agrees that it is simply not part of a Chapter 7 trustee's portfolio of duties to exercise a "veto power over a debtor's personal decisions, at least with respect to pre-petition expenditures." *Xaverian*, 502 B.R. at 132-33. As one bankruptcy court noted in a related context, "a trustee's powers are not limitless . . . [and] decisions which are purely personal in nature are not subject to the bankruptcy trustee's authority." *In re Thompson*, 253 B.R. 823, 825 (Bankr. N.D. Ohio 2000). As another court found, "the Bankruptcy Code confers absolutely no power upon the trustee to make decisions concerning how a debtor manages his

every day affairs such as where the debtor will live or work." *French v. Miller (In re Miller)*, 247 B.R. 704, 709 (Bankr. N.D. Ohio 2000).

In sum, persuasive law in this and other jurisdictions supports the conclusion that tuition payments made by a debtor to educate his or her minor children confer reasonably equivalent value on the parent because, among other reasons, parents have an obligation to provide for their children's necessities, including their education and care, and it is not necessary for a family to meet that obligation, and all of its other pre-petition daily needs and requirements, at the lowest possible cost, or no cost at all. Such education and care expenses also confer reasonably equivalent value on the parent because parents and their minor children form a single economic unit for these purposes, so that the value received in the form of the education and care of the minor child provides a tangible benefit to the parent. Indeed, it is hard to imagine how the education and care of a young child could provide a benefit to the child, but not to the parent or family. A different rule would effectively expand the role and the duties of the Chapter 7 trustee well beyond its statutory limits, and this Court declines to take that step.

In light of this, here, the record shows that the Trustee does not adequately allege that Ms. Michel received no consideration, or less than a reasonably equivalent value, from Trey Whitfield in return for the tuition payments that comprise the Two-Year Transfers. The allegations of the Amended Complaint show that Ms. Michel made these payments for the education and care of her minor children, and that she and her children form a single economic unit for purposes of determining reasonably equivalent value. Viewed another way, the allegations of the Amended Complaint do not establish a plausible basis to conclude that Ms. Michel did not receive reasonably equivalent value in return for the Two-Year Transfers. That is, the Trustee has not adequately alleged the third element of this claim.

The fourth element of the Trustee's Section 548(a)(1)(B) claim is that Ms. Michel was insolvent on the dates that the Two-Year Transfers were made, or became insolvent as a result of those transfers.

Here, the record shows that the Trustee alleges that Ms. Michel was insolvent at the time the transfer was made, or that she was rendered insolvent as a result of the transfer.  And he alleges that she "was not financially able" to make the Transfers when she did.  Am. Compl. ¶ 20.  But the Trustee does not allege facts separate from these bare conclusions sufficient to show that Ms. Michel was insolvent when she made each of the tuition payments, or that she became insolvent as a result of these payments.  That is, the Trustee has not adequately alleged the fourth element of this claim.

*          *          *

In sum, and based on the entire record, Trey Whitfield has shown that the Trustee does not adequately allege the third element of his Section 548(a)(1)(B) claim, that Ms. Michel received no consideration, or less than reasonably equivalent value, from the School in return for her tuition payments that comprise the Two-Year Transfers.  Trey Whitfield has also shown that the Trustee does not adequately allege the fourth element of this claim, that she was insolvent when the Two-Year Transfers were made or that she became insolvent as a result of those transfers.  Viewed another way, the School has shown that the Trustee does not state a plausible claim to recover the Two-Year Transfers as constructive fraudulent transfers under Bankruptcy Code Section 548(a)(1)(B).

For these reasons, and based on the entire record, Trey Whitfield's Motion to Dismiss the First Claim for Relief is granted.

*Whether Trey Whitfield Has Shown that the Trustee Does Not State a Plausible Claim To Avoid and Recover the Tuition Payments as Constructive Fraudulent Transfers Under Bankruptcy Code Section 544 and New York Debtor and Creditor Law*

The Trustee's Second Claim for Relief seeks to avoid the Transfers in the amount of $45,880 as constructive fraudulent transfers under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Sections 273, 274, 275, and 278.

Bankruptcy Code Section 544 authorizes a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). That is, Section 544 authorizes a trustee to avoid a transfer that is voidable under applicable state law, and here, New York's Debtor and Creditor Law provides the applicable law.

NY DCL Section 273 provides that a transfer will be set aside as a constructive fraudulent conveyance when, without regard to the actual intent of the transferor, the transfer is made for less than fair consideration and the transferor was insolvent on the date that the transfer was made or became insolvent as a result thereof. NY DCL Section 274 provides that "[e]very conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent." NY DCL Section 275 provides that "[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." And NY DCL Section 278 permits a creditor whose claim has matured to "[h]ave the conveyance set aside . . . to the extent

26

necessary to satisfy his claim." As the terms of these provisions plainly state, the absence of fair

consideration in return for the transfer is a common element of each of these grounds for relief.

Trey Whitfield argues that the Trustee does not state a plausible claim under Bankruptcy

Code Section 544 and New York Debtor and Creditor Law because, among other reasons, Ms.

Michel received reasonably equivalent value and/or fair consideration in exchange for the

transfers, in the form of the education and care of her minor children. For these same reasons,

the School argues that the tuition payments could not have been made with fraudulent intent.

Trey Whitfield also argues that "the Trustee's arguments misconstrue the meaning of a

constructive fraudulent conveyance and target parents acting in the best interests of their

children, and should be rejected." Reply ¶ 9.

The Trustee responds that when the Court correctly applies the "reasonably equivalent

value" standard, measured in "some present pennies," Ms. Michel did not receive reasonably

equivalent value from Trey Whitfield in exchange for her tuition payments because satisfying

her legal obligation to educate her children does not yield a concrete economic benefit to her.

Opp. ¶ 41.

As noted above, a common element of the Trustee's claims to recover the Transfers

under NY DCL Sections 273, 274, and 275 is that the transfer at issue is made "without fair

consideration." And on a motion to dismiss, the Court must assume that the Trustee's well-

pleaded allegations of fact and the reasonable inferences that they support are true.

Here, the record shows that the Trustee alleges that between September 2011 and June

2014, Ms. Michel made payments to Trey Whitfield in the form of tuition payments for the

education of her minor children "without adequate consideration." Am. Compl. ¶ 31. But here,

as discussed above, the record also shows that the Trustee does not adequately allege that Ms.

Michel received no consideration, or less than a reasonably equivalent value, from Trey Whitfield in return for the tuition payments that the Trustee seeks to recover.  Rather, the allegations of the Amended Complaint show that Ms. Michel made these payments for the education of her minor children, and that she and her children form a single economic unit for purposes of determining reasonably equivalent value.  That is, the allegations of the Amended Complaint do not establish a plausible basis to conclude that Ms. Michel did not receive reasonably equivalent value in return for the Transfers.

As also noted above, here, the record shows that the Trustee alleges that Ms. Michel "was not financially able" to make the Transfers when she did.  Am. Compl. ¶ 20.  But the Trustee does not allege facts separate from these bare conclusions sufficient to show that Ms. Michel was insolvent on the dates that the tuition payments were made, or that she became insolvent as a result of these payments.

In sum, and based on the entire record, Trey Whitfield has shown that the Trustee does not adequately allege a necessary element of his claims to recover the Transfers under New York Debtor and Creditor Law Sections 273, 274, or 275, that Ms. Michel received no consideration, or less than reasonably equivalent value, from the School in return for her tuition payments that comprise the Transfers.  Trey Whitfield has also shown that the Trustee does not adequately allege an additional element of his New York Debtor and Creditor Law Section 273 claim, that she was insolvent when the Transfers were made or that she became insolvent as a result of those transfers.  Viewed another way, the School has shown that the Trustee does not state a plausible claim to recover the Transfers as fraudulent transfers under Bankruptcy Code Section 544 and New York Debtor and Creditor Law Sections 273, 274, or 275.

For these reasons, and based on the entire record, Trey Whitfield's Motion to Dismiss the Second Claim for Relief is granted.

### *Whether Trey Whitfield Has Shown that the Trustee Does Not State a Plausible Claim To Recover the Tuition Payments Under a Common Law Theory of Unjust Enrichment*

The Trustee's Third Claim for Relief seeks to recover the Transfers in the amount of $45,880 under a common law theory of unjust enrichment.

A claim for unjust enrichment under New York law has three elements.  These are that the defendant was enriched, at the plaintiff's expense, and that equity and good conscience militate against permitting the defendant to retain what the plaintiff seeks to recover.  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

Trey Whitfield argues that the Trustee does not state a plausible claim to recover Ms. Michel's tuition payments under a common law theory of unjust enrichment because he does not allege that the School received more than its standard tuition payments from Ms. Michel during the period covered by the Transfers, because the Trustee does not allege the absence of a "traditional tuition payment contract between [Trey Whitfield] and the Debtor," and because the claim is simply frivolous.  Mot. to Dismiss ¶ 94.

The Trustee responds that he adequately alleges each element of his unjust enrichment claim, and in particular, that Trey Whitfield unfairly benefitted from the tuition payments made by Ms. Michel, and that the School has been unjustly enriched as a result.  He also argues that Ms. Michel did not receive adequate consideration for the Transfers because she did not receive a concrete benefit in return.  And the Trustee argues that the "equity and good conscience" element of his unjust enrichment claim "is an equitable attempt to restore the balance between the parties," and as between the two parties in direct privity, the payor and the payee, the value should be restored to the payor.  Opp. ¶ 44.

29

As described above, to state a claim for unjust enrichment under New York law, the
Trustee must allege that Trey Whitfield was enriched, at the estate's expense, and that equity and
good conscience militate against permitting the School to retain what the Trustee seeks to
recover.  And on a motion to dismiss, the Court must assume that the Trustee's well-pleaded
allegations of fact and the reasonable inferences that they support are true.  The Court considers
each of these elements in turn.

The first element of the Trustee's unjust enrichment claim is that Trey Whitfield was
enriched by the Transfers.  Here, the record shows that the Trustee alleges that Ms. Michel made
the Transfers in the form of tuition payments for her minor children to Trey Whitfield, and that
Trey Whitfield received those Transfers.  That is, the Trustee has adequately alleged the first
element of this claim.

The second element of the Trustee's unjust enrichment claim is that the benefit to the
School occurred at the estate's expense.  Here too, the record shows that the Trustee alleges that
Ms. Michel made the Transfers at issue to Trey Whitfield, and that the Transfers occurred at the
estate's expense because the amounts of the Transfers would have been available to satisfy Ms.
Michel's creditors if the Transfers had not been made.  That is, the Trustee has adequately
alleged the second element of this claim.

The third element of the Trustee's unjust enrichment claim is that equity and good
conscience militate against permitting Trey Whitfield to retain the benefit that is sought.  Here,
the record shows that the Trustee alleges that Ms. Michel "did not receive any, or adequate,
consideration in connection with the Transfers," and that the School "unfairly benefitted by
receiving and retaining the Transfers, and has been unjustly enriched thereby."  Am. Compl.
¶¶ 36-37.  But the Trustee does not allege facts that provide a plausible basis to conclude that

30

Ms. Michel's tuition payments for the education and care of her minor children should be returned to the estate because Trey Whitfield somehow benefitted unfairly from them. The allegations of the Amended Complaint do not show, or even suggest, that the School charged Ms. Michel anything other than its standard tuition payments, or that it provided anything less than adequate and care for her minor children. And to the same effect, as noted above, the Trustee's allegations do not show that Ms. Michel received less than reasonably equivalent value for the tuition payments that she made.

Notably, other courts confronted with the same or similar questions have reached the same conclusion. For example, in *Xaverian*, the court considered a similar claim by the trustee that the defendant schools, and the debtors' minor children too, were unjustly enriched by the debtors' pre-petition tuition payments for their education. And there, the court concluded:

> The Defendants received tuition payments from the Debtors and, in exchange, provided education to the Debtors' minor children. The Debtors received the direct and indirect benefit of their children receiving an education. The enrichment, as between the Defendants and the Debtors, therefore, was not unjust. . . . Moreover, the children's "enrichment" by receiving an education paid for by the Debtors is not unjust.

*Xaverian*, 502 B.R. at 138-39 (citing cases).

In sum, and based on the entire record, Trey Whitfield has shown that the Trustee does not adequately allege a necessary element of his unjust enrichment claim to recover the Transfers, that equity and good conscience militate against permitting the School to retain the tuition payments made by Ms. Michel. Viewed another way, the School has shown that the Trustee does not state a plausible claim to recover the Transfers under a common law theory of unjust enrichment.

For these reasons, and based on the entire record, Trey Whitfield's Motion to Dismiss the Third Claim for Relief is granted.

*Whether Trey Whitfield Has Shown that the Trustee Does Not State a Plausible Claim To Avoid*
*and Recover the Tuition Payments as Intentional Fraudulent Transfers Under Bankruptcy Code*
*Section 548(a)(1)(A)*

The Trustee's Fourth Claim for Relief seeks to avoid and recover the Transfers in the

amount of $45,880 as intentional fraudulent transfers under Bankruptcy Code Sections 548 and

550.  The Trustee alleges that these tuition payments were made by Ms. Michel, that she did not

receive adequate consideration from Trey Whitfield in return, and that she made the payments

with actual intent to hinder, delay, or defraud her creditors.

Section 548(a)(1)(A) applies to intentional fraudulent transfers, and provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in
> property . . . that was made . . . on or within 2 years before the date of the
> filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with actual intent to
> hinder, delay, or defraud any entity to which the debtor was or became, on
> or after the date that such transfer was made or such obligation was
> incurred, indebted;

11 U.S.C. § 548(a)(1)(A).

To state a plausible claim under Section 548(a)(1)(A), the Trustee must allege three

elements.  First, he must allege that an interest of Ms. Michel's in property was transferred.

Second, he must allege that she made the transfer within two years before the petition was filed.

Third, he must allege that Ms. Michel made the transfer with actual intent to hinder, delay, or

defraud her creditors.

And because the Trustee seeks to recover the Transfers as intentional fraudulent transfers,

he must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b).  This

means that "conclusory allegations that [the] defendant's conduct was fraudulent or deceptive are

not enough."  *Decker*, 681 F.2d at 114.  Instead, the complaint must identify with some

specificity the acts or statements constituting the fraud.  As the Second Circuit has observed in a

different context, "the specificity requirement grows out of the 'the desire to protect defendants from the harm that comes to their reputations . . . when they are charged with serious wrongdoing.'"  *Ross*, 607 F.2d at 557 (quoting *Segal v. Gordon*, 967 F.2d 602, 607 (2d Cir 1972)).

Trey Whitfield argues that the Trustee does not state a plausible claim under Section 548(a)(1)(A) for several reasons.  It states that based on the allegations of the Amended Complaint, Ms. Michel received reasonably equivalent value in exchange for her tuition payments to the School, so that she could not have made the Transfers with the intent to defraud her creditors.  Trey Whitfield also argues that the Trustee does not provide "even minimal allegations" to support his claims that Ms. Michel made the tuition payments with fraudulent intent.  Reply ¶ 2.  The School argues that the Trustee's assertion that Ms. Michel made the Transfers while she was insolvent does not provide a plausible basis to conclude that she acted with fraudulent intent.  Trey Whitfield also asserts that the Trustee does not specifically allege "facts to show the presence of any of the badges of fraud," or facts that support an inference that Ms. Michel intended to defraud her creditors.  Reply ¶ 7.

The Trustee responds that the great weight of authority holds that in the context of fraudulent conveyance claims, "reasonably equivalent value" must be measured in "some pennies," and that any "emotional benefit" that Ms. Michel obtained from providing an education for her children does not satisfy the applicable standard in the absence of an economic exchange of value.  Opp. ¶ 41.  The Trustee also argues that this Court should follow *In re Gonzalez*, and the rule that "a benefit of economic value . . . as a result of the transfer" is required.  *In re Gonzalez*, 342 B.R. at 172.  And he argues that while direct evidence of actual

fraudulent intent is rare, that is not a reason to ignore the potential for such evidence, so that he "should be allowed to . . . engage in discovery, and prove his allegations." Supp. Opp. ¶ 22.

As described above, to state a claim under Section 548(a)(1)(A), the Trustee must allege that an interest of the debtor in property was transferred, that the transfer was made within two years before the bankruptcy case was commenced, and that the debtor made the transfer with actual intent to hinder, delay, or defraud her creditors. In addition, his allegations of fraudulent intent must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). And on a motion to dismiss, the Court must assume that the Trustee's well-pleaded allegations of fact and the reasonable inferences that they support are true. The Court considers each of these elements in turn.

The first element of the Trustee's Section 548(a)(1)(A) claim is that an interest of Ms. Michel's in property was transferred. Here, as with the Trustee's Section 548(a)(1)(B) claim, the record shows that the Trustee alleges that during the two-year period from July 5, 2012 through July 4, 2014, Ms. Michel made the Two-Year Transfers to Trey Whitfield in the amount of $30,190, and it is reasonable to infer that the payments were transfers of an interest of the debtor in property. That is, the Trustee has adequately alleged the first element of this claim.

The second element of the Trustee's Section 548(a)(1)(A) claim is that the transfer was made within two years before Ms. Michel filed her bankruptcy petition. Here again, as with the Trustee's Section 548(a)(1)(B) claim, the record shows that the Trustee alleges that the Two-Year Transfers were made between July 5, 2012 and July 4, 2014, or within two years of the petition date of July 4, 2014. That is, the Trustee also has adequately alleged the second element of this claim.

The third element of the Trustee's Section 548(a)(1)(A) claim is that Ms. Michel made the transfers with actual intent to hinder, delay, or defraud her creditors.

Here, the record shows that the Trustee alleges, on information and belief, that Ms. Michel knew that she was in financial difficulty and/or was insolvent when she made tuition payments to Trey Whitfield for the education and care of her minor children. He also alleges that Trey Whitfield knew of Ms. Michel's financial difficulties and/or insolvency when she made these payments. And he alleges that she "applied for scholarship[s] and provided financial information to [Trey Whitfield]." Am. Compl. ¶ 43. The Trustee also alleges that she made the tuition payments to the School with actual intent to hinder, delay, or defraud her other creditors "because [she] knew she would not be able to pay all her creditors after making the Transfers." Am. Compl. ¶ 42. The Trustee also alleges, on information and belief "and according to documents provided to the Trustee, [Trey Whitfield] provided financial scholarship relief to reduce the tuition knowing that [Ms. Michel] could not afford to pay" the tuition that it charged. Am. Compl. ¶ 44. And the Trustee alleges that Trey Whitfield did not provide any benefit to Ms. Michel, as opposed to her minor children.

At the outset, it has long been recognized that Section 548's "statutory text focuses on the debtor's intent," and that "[t]he requirement is disjunctive; any one of the three intents [to hinder, delay, or defraud] is sufficient for liability." Alan Resnick & Henry Sommer, *Collier on Bankruptcy* ¶ 548.04[1][a] (16th ed. 2017). At the same time, "the requisite actual intent . . . must be something more than just an intent to prefer one creditor over another. As a result, the trustee must show that the debtor had an intent to interfere with creditors' normal collection processes or with other affiliated creditor rights for personal or malign ends." *Id*.

It is also well established that a plaintiff need not fill in every detail of its claim in order to survive a motion to dismiss.  But speculation and possibility are not the same as plausibility, and just as a plaintiff should be able to proceed to discovery on a plausible claim, a defendant should be able to obtain the dismissal of a claim that does not give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

This Court has carefully reviewed the well-pleaded allegations of the Amended Complaint and the reasonable inferences that they support, and has done so in light of the requirement to take those allegations and inferences as true, and to draw all reasonable inferences in favor of the plaintiff. *See DiFolco*, 622 F.3d at 110-11.  But even when viewed in that light, it is plain that the Trustee has not alleged facts sufficient to show that it is plausible to conclude that Ms. Michel made the tuition payments to Trey Whitfield for her children's education and care in order to hinder, delay, or defraud her creditors, for several reasons.

The Trustee does not allege facts that show, or even suggest, that Ms. Michel had any purpose other than the education and care of her children when she made tuition payments to the School.  And as described above, the Amended Complaint's allegations show that Ms. Michel's tuition payments conferred a tangible benefit on her.

Nor does the Amended Complaint show, or even suggest, that by applying for scholarship aid, Ms. Michel signaled an intent to hinder, delay, or defraud her creditors, or that by considering her application for scholarship assistance, Trey Whitfield was somehow on notice that Ms. Michel intended to hinder, delay, or defraud her creditors.  And the Trustee's allegations on information and belief do not adequately set forth "a statement of facts upon which the belief is founded." *Segal*, 467 F.2d at 608.  That is, the Trustee has not adequately alleged the third element of this claim.

*         *         *

In sum, and based on the entire record, Trey Whitfield has shown that the Trustee does not adequately allege the third element of his Section 548(a)(1)(A) claim, that Ms. Michel made the tuition payments that comprise the Transfers with intent to hinder, delay, or defraud her creditors.  Viewed another way, the School has shown that the Trustee does not state a plausible claim to recover the Transfers as fraudulent transfers under Bankruptcy Code Section 548(a)(1)(A).

For these reasons, and based on the entire record, Trey Whitfield's Motion to Dismiss the Fourth Claim for Relief is granted.

### *Whether Trey Whitfield Has Shown that the Trustee Does Not State a Plausible Claim To Avoid and Recover the Tuition Payments as Intentional Fraudulent Transfers Under New York Debtor and Creditor Law*

The Trustee's Fifth Claim for Relief seeks to avoid and recover the Transfers in the amount of $45,880 as intentional fraudulent transfers under New York Debtor and Creditor Law Section 276.

NY DCL Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NY DCL § 276.

To state a plausible claim under NY DCL Section 276, the Trustee must allege three elements.  These are "(1) [that] the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud."  *Kittay v. Flutie NY Corp. (In re Flutie NY Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004).  As this Court has noted, NY DCL Section 276 "focuses on the 'actual intent' of the transacting parties . . . [and] . . . where actual

intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." *McCord v. Ally Financial, Inc. (In re USA United Fleet)*, 559 B.R. 41, 61 (Bankr. E.D.N.Y. 2016) (quoting *U.S. v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994)).

A plaintiff may rely on both direct and indirect indicia of fraudulent intent in stating and proving a claim under NY DCL Section 276.  As one court has noted:

> The requisite intent under . . . section [276] need not be proven by direct evidence but may be inferred (a) where the transferor has knowledge of the creditor's claim and knows that he is unable to pay it; (b) where the conveyance is made without fair consideration; or (c) where the transfer is made to a related party (i.e., husband to wife, corporation to stockholder).

*De West Realty Corp. v. Internal Revenue Service*, 418 F. Supp. 1274, 1279 (S.D.N.Y. 1976).

To similar effect, courts recognize that the requisite intent may arise from the totality of the circumstances, and one court has observed that "it is well accepted that intent to hinder or delay creditors is sufficient, and intent to defraud need not be proven." *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.*), 376 B.R. 390, 403 (Bankr. S.D.N.Y. 2007).

And here, as with the Trustee's claim to recover the Transfers under Bankruptcy Code Section 548(a)(1)(A), the Trustee must meet the particularity requirements of Rule 9(b).  This means that conclusory allegations do not suffice, and that the complaint must allege with some specificity the acts or statements constituting the fraud.  *See Decker*, 681 F.2d at 114; *Ross*, 607 F.2d at 557.

Trey Whitfield argues that the Trustee does not state a plausible claim under NY DCL Section 276 because the Amended Complaint does not adequately allege that Ms. Michel intended to defraud other creditors when she made tuition payments for her children's education and care to the School.  It argues that a parent's obligation to educate minor children is an antecedent debt, and that the satisfaction of that debt constitutes value for purposes of Section

548, and presumably NY DCL Section 276.  Inasmuch as Ms. Michel received value, even indirectly, in return for these payments, Trey Whitfield argues that there could not have been an intent to convey fraudulently.

The Trustee responds that with respect to this claim – and all of his claims – the Amended Complaint contains sufficient allegations to put Trey Whitfield on notice of the basis for his claim that Ms. Michel made the tuition payments with intent to hinder, delay, or defraud her creditors.  The Trustee notes that the Amended Complaint states:

> According to documents provided to the Trustee, [Ms. Michel] knew that she was in financial difficulty and/or was insolvent at the time [that she was paying for the tuition to Trey Whitfield].  [Trey Whitfield] knew [Ms. Michel] was in financial difficulty and/or was insolvent at the time [that she was paying for the tuition to the School]. . . . [M]oreover, the Debtor knew she would not be able to pay all her creditors after making the [tuition payments to Trey Whitfield].

Opp. ¶ 6 (citing Am. Compl. ¶¶ 24-29).

As described above, to state a claim under NY DCL Section 276, the Trustee must allege "(1) [that] the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud."  *Kittay*, 310 B.R. at 56.  As another court has noted, "[t]o survive a motion to dismiss on a § 276 claim, a plaintiff must allege that a defendant acted with actual intent to hinder, delay, or defraud creditors and must plead its allegations with particularity as required by Fed. R. Civ. P. 9(b)."  *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 382 (S.D.N.Y. 2013).  The Court considers each of these elements in turn.

The first element of the Trustee's NY DCL Section 276 claim is that creditors could have realized a portion of their claims from "the thing transferred."  Here, the record shows that the Trustee alleges that during the period from September 2011 to June 2014, Ms. Michel made the

Transfers in the form of tuition payments for her children's education and care to Trey Whitfield in the amount of $45,880, and it is reasonable to infer that those funds could have been used to pay the claims of her creditors.  That is, the Trustee has adequately alleged the first element of this claim.

The second element of the Trustee's NY DCL Section 276 claim is that Ms. Michel made the Transfers.  Here, as noted, the record shows that the Trustee alleges that during the period from September 2011 to June 2014, Ms. Michel made the Transfers.  That is, the Trustee has adequately alleged the second element of this claim.

The third element of the Trustee's NY DCL Section 276 claim is that Ms. Michel made the tuition payments with actual intent to hinder, delay, or defraud her creditors.

Here, as with the Trustee's Section 548(a)(1)(A) claim, the record shows that the Trustee alleges, on information and belief, that Ms. Michel knew that she was in financial difficulty and/or was insolvent when she made tuition payments to Trey Whitfield for the education of her minor children.

He also alleges that Ms. Michel applied for scholarships and provided financial information to Trey Whitfield.  And the Trustee alleges that she made the tuition payments to the School with actual intent to hinder, delay, or defraud her other creditors "because [she] knew she would not be able to pay all her creditors after making the Transfers."  Am. Compl. ¶ 42.  The Trustee also alleges, on information and belief "and according to documents provided to the Trustee, [Trey Whitfield] provided financial scholarship relief to reduce the tuition knowing that [Ms. Michel] could not afford to pay" the tuition that it charged.  Am. Compl. ¶ 44.  And the Trustee alleges that Trey Whitfield did not provide any benefit to Ms. Michel, as opposed to her minor children.

Just as with the Trustee's Section 548(a)(1)(A) claim, this Court has carefully reviewed the well-pleaded allegations of the Amended Complaint and the reasonable inferences that they support, and has done so in light of the requirement to take those allegations and inferences as true, and to draw all reasonable inferences in favor of the plaintiff. *See DiFolco*, 622 F.3d at 110-11. And here too, the Court concludes that the Trustee has not alleged facts sufficient to show that it is plausible to conclude that Ms. Michel made the tuition payments to Trey Whitfield for her children's education and care in order to hinder, delay, or defraud her creditors. The Trustee's allegations do not indicate that Ms. Michel had any ulterior motive or purpose other than the education and care of her children. The allegations also show that the tuition payments conferred a tangible benefit on her.

Similarly, the Trustee's allegations that Ms. Michel applied for scholarship aid to lower those payments do not show that she intended to hinder, delay, or defraud her creditors, and his allegations that Trey Whitfield considered her financial aid application do not indicate that the School was aware of any such purpose.

And the Trustee's allegations on information and belief do not adequately set forth "a statement of facts upon which the belief is founded." *Segal*, 467 F.2d at 608. That is, the Trustee has not adequately alleged the third element of this claim.

*          *          *

In sum, and based on the entire record, Trey Whitfield has shown that the Trustee does not adequately allege the third element of his New York Debtor and Creditor Law Section 276 claim, that Ms. Michel made the tuition payments that comprise the Transfers with intent to hinder, delay, or defraud her creditors. Viewed another way, the School has shown that the

41

Trustee does not state a plausible claim to recover the Transfers as intentional fraudulent transfers under New York Debtor and Creditor Law Section 276.

For these reasons, and based on the entire record, Trey Whitfield's Motion to Dismiss the Fifth Claim for Relief is granted.

### Conclusion

For these reasons, and based upon the entire record, the Motion to Dismiss is granted. An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**September 18, 2017**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**